UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| FIORAVANTE SETTEMBRE | ) | CASE NO. 05-61271 |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| _____ | ) | |
| FIDELITY & GUARANTY LIFE INSURANCE | ) | |
| COMPANY and LIFE EVENT ADVANTAGE | ) | |
| DIVISION OF LIFE INSURANCE COMPANY | ) | |
| OF THE SOUTHWEST and NATIONAL LIFE | ) | |
| INSURANCE COMPANY | ) | |
| Plaintiffs. | ) | |
| vs. | ) | A.P. No.  06-3133 |
| FIORAVANTE SETTEMBRE | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM**

This adversary proceeding came before the Court on December 14, 2009, for trial.  Upon consideration of the argument of counsel, the briefs filed, and the testimony and exhibits presented at trial, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

**I.     STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. §1409(a).

**II.    FINDINGS OF FACT**

1.   The Debtor/ Defendant filed a petition for relief under Chapter 7 on October 15, 2005.

2.   On May 15, 2006, the Plaintiffs moved for a Rule 2004 examination of the Defendant and sought a production of documents in connection with that motion.  The Plaintiffs sought to reconstruct the Defendant's financial affairs during the period of time prior to the filing of the bankruptcy petition.  By order entered May 17, 2006, and later amended on June 16,

2006, the Court granted the Plaintiffs' motion and ordered the Defendant to produce the following documents:

> (1) To the extent not previously produced, all state and federal tax returns, schedules, and all related documents necessary to the completion of returns, including but not limited to W-2 forms, and schedules for the years 2000, 2001, 2002, 2003, 2004, and 2005;
>
> (2) All employment contracts, contracts for wages, contracts for commissions, or any other contract or agreement for compensation between Mr. Settembre and any person or entity which could have potentially generated compensation to Mr. Settembre in the years 2000, 2001, 2002, 2003, 2004, and 2005. Should any such agreement not exist in writing, a detailed description of the agreement. Additionally, a description of Mr. Settembre's job history for the same years, including but not limited to job titles and responsibilities as well as a description of all personal investments Mr. Settembre may have made in any such entities.
>
> (3) To the extent not previously produced, all bank statements, check registers and cancelled checks (including endorsements on same), whether kept in electronic or paper form, for all bank accounts held in the name (either jointly or singly) of Fioravante Settembre or Fiore Settembre or the Settembre Group for the years 2000, 2001, 2002, 2003, 2004, and 2005.
>
> (4) To the extent not previously produced, all life insurance policies on which Mr. Settembre is the insured life and all documents related thereto including copies of all checks or other remittances of premium payments for each such policy, including but not limited to policies held with Old Line Life, Vantis Life, and AIG.
>
> (5) The general ledger detail, receipts, disbursement registers, accountant workpapers and tax returns for The Settembre Group for the years 2000, 2001, 2002, 2003, 2004, and 2005.
>
> (6) All monthly statements for all trusts, investment, brokerage and or other income-generating accounts held in the name of Fioravante Settembre or Fiore Settembre for the years 2000, 2001, 2002, 2003, 2004, and 2005.

3. The Defendant did not immediately comply with the Court's production orders, but instead trickled documents to Plaintiffs counsel over a six month period.

4. The Defendant provided no documents (tax returns, W-2's, bank records) for the tax year 2000. With respect to tax years 2001 and 2002, the Defendant provided an unsigned federal tax return, an unsigned state return, and W-2s from InsBanc, Inc. ("InsBanc") and Lafayette Life Insurance Company ("Lafayette"). The Defendant also provided bank records from 2001 to 2005 indicating that he possessed a checking account in the name of "The Settembre." With respect to tax year 2003, the Defendant provided an unsigned federal tax return, but no state tax return. Additionally, the Defendant provided 2003 W-2s from InsBanc and Lafayette. For 2004, the Defendant provided an unsigned federal tax return, an unsigned state return, and a W-2 from InsBanc. For the tax year 2005, the Defendant provided a signed federal tax return, an unsigned state tax return, and W-2s from InsBanc, and AG Life Insurance Company.

5. The Defendant produced no employment contracts, contracts for wages, contracts for commissions, or any other contract or agreement for compensation between himself and any of the entities he worked for during these years.

6. The Defendant produced no check registers and only some cancelled checks for these years. The bank records produced show deposits, but do not indicate the source of the deposits. Likewise, the bank records show withdrawals, but do not always show to what use the Defendant spent the funds, business or personal. Similarly, the bank records reflect numerous large cash withdrawals, but contain no information about how the Defendant expended the cash.

7. The Defendant did not produce complete copies of all his life insurance policies. He did provide a declaration page, but not the whole policy as ordered.

8. Other than bank records, the Defendant produced no financial records or tax returns relating

   to The Settembre Group for any of the years in question.

9.  The Defendant produced no monthly statements for a brokerage account he owned with Raymond James.

10.  On July 17, 2006, the Plaintiffs filed an adversary complaint objecting to the Defendant's discharge. The Plaintiffs alleged that the Defendant failed to keep or preserve recorded information, including books, documents, records and papers, that are ordinarily kept by reasonable persons in the debtor's same circumstances and from which the debtor's financial condition or business transactions might be ascertained. Accordingly, the Plaintiffs requested that the Defendant's discharge be denied pursuant to 11 U.S.C. § 727(a)(3). Paragraph four (4) of the complaint specifically alleged that the Defendant was a sophisticated businessman who marketed and sold insurance products.

11.  On August 7, 2006, the Defendant filed an answer to the complaint, wherein he denied that he failed to keep or preserve recorded information, but did admit to the allegation of sophistication set forth in paragraph four (4).

12.  On September 15, 2006, the Plaintiffs moved to amend their complaint. By order entered September 21, 2009, the Court granted the motion to amend. The Amended Complaint added a count under § 727(a)(4)(D) (knowingly and fraudulently withheld recorded information, including books, documents and records, and papers, relating to his property or affairs) and a count under § 727(a)(6)(A) (refusal to obey a lawful order of court). The Amended Complaint also included the same allegation with respect to the Defendant's sophistication.

13.  On October 17, 2006, the Defendant filed an answer to the Amended Complaint. As before, the Defendant denied the § 727 allegations, but again admitted to the allegation of

sophistication.

14. On November 16, 2006, the Plaintiffs moved for summary judgment alleging no genuine issue of material fact existed and that the Court should grant summary judgment denying the Defendant's discharge pursuant to § 727(a)(3) (failure to keep or preserve recorded information). The Defendant filed a response in opposition to the summary judgment motion.

15. On January 25, 2007, this Court entered a Memorandum and Order granting the Plaintiffs' motion for summary judgment. That Memorandum and Order, incorporated herein by reference, found the Defendant to be a sophisticated businessman and that he failed to keep sufficient financial records for a sophisticated business person. This Court held:

> It is clear to the Court that the Defendant is a sophisticated person, and that he should be able to adequately produce his financial documents for the period of time in question. The law does not require impeccable bookkeeping or extravagant accounting measures, but it does require at least a fundamental undertaking to maintain proper records. Here, the records are simply inadequate. The Defendant could not produce tax records for the year 2000 and could not provide signed copies of his tax records for the years 2001 through 2004. He could not produce check registers or copies of all cancelled checks. Furthermore, when the Defendant chose to intermingle his personal and business checking accounts, he was required to maintain adequate records in order to determine which transactions were business in nature and which were personal in nature. Because of the Defendant's failure to keep, or produce sufficient financial records, he left no trail as to the nature of many of the transactions that occurred during this period of time. Moreover, by not keeping adequate records regarding the deposits into his general checking accounts, it is impossible to determine if the funds deposited originated with Insbanc or some other source. The Plaintiffs, as creditors of Insbanc and the Defendant, should be able to adequately trace the funds they advanced. Here, due to the Defendant's failure to keep or preserve sufficient records, this is simply not possible.

*In re Settembre*, 2007 WL 204019, at *3 (Bankr. W.D. Ky. Jan. 24, 2007)

16. The Defendant appealed this Court's order and on December 19, 2007, the United States District Court for the Western District of Kentucky entered an order reversing this Court's decision. The District Court found that a trial needed to be held to allow the Defendant to present evidence regarding his level of sophistication, the complexity of his financial situation, the nature of the Settembre Group checking account, and whether there were independent means of substantiating his financial transactions. *Settembre v. Fidelity & Guar. Life Ins. Co.*, 2007 WL 4546669, at *4 (W.D. Ky. Dec. 19, 2007).

17. The Plaintiffs appealed the decision of the District Court, but the Sixth Circuit Court of Appeals found the decision by the District Court not ripe for review and dismissed the appeal. *Settembre v. Fidelity & Guar. Life Ins. Co.*, 552 F.3d 438, 441-442 (6th Cir. 2009).

18. After the Sixth Circuit dismissed the appeal, the District Court remanded the matter back to this Court by order entered May 1, 2009. Once remanded, this Court set a trial date for December 14, 2009.

19. At trial, the evidence consisted of documentary evidence and the Defendant's sworn testimony. The Defendant testified that he graduated from St. Peter College in 1975, and worked as a teacher from 1975-1978. The Defendant entered the insurance field in 1975 and has been in insurance for over 30 years, and specifically worked in a managerial capacity since 1980.

20. At some point, the Defendant worked for J.P. Morgan Chase Bank ("Chase") in New York and eventually became a director of Lafayette, which operated on a national basis. The Defendant worked in a managerial capacity at both Chase and Lafayette for 3½ to 4 years each. During this time, the Defendant supervised anywhere between 50 to 100 employees.

21. During this same period of time, the Defendant also worked for an entity called Vantis Life

6

Insurance Company and American International Group ("AIG").

22. Sometime in 2001, the Defendant formed and became 50% owner of an entity called InsBanc, an S-Corporation. Even though the Defendant testified he did not handle the daily funds of InsBanc, he held the position of chairman and/or president and chief executive officer and did possess the authority to sign checks for the corporation.

23. During this same period of time, the Defendant began marketing himself as The Settembre Group. The Defendant offered no testimony as to what services or products, if any, The Settembre Group provided.

24. On August 1, 2001, the Defendant, Eric Anderson, and InsBanc borrowed $500,000 from Life Event for operating capital. On July 2, 2003, they borrowed $200,000 from Fidelity & Guaranty Life Insurance Company ("F&G") for operating capital. They also borrowed $800,000 from Reliastar; $200,000 from The Hartford; and nearly $1,000,000 from National City Bank. In just a 3 year time period, Insbanc and/or the Defendant borrowed no less than $2.6 million dollars.

25. At trial, as he did in his answer and amended answer, the Defendant testified that he was a sophisticated business person.

26. The Defendant also admitted that he failed to completely comply with the May 17, 2006, and the June 16, 2006 orders entered in the main bankruptcy case directing turnover of financial records. The Defendant failed to provide any financial records for the year 2000. The Defendant failed to provide complete records for Insbanc. The Defendant also admitted to misrepresenting in both correspondence with Plaintiffs' counsel and in discovery responses the extent of his compliance with the orders for production.

27. Twice in October, 2006, after the Plaintiffs initiated this adversary proceeding in July 2006

and months after the entry of the orders directing turnover entered in the main bankruptcy case, the Defendant provided some additional tax documents to the Plaintiffs.

28. The Defendant admitted that he produced no additional records since this Court granted the Plaintiffs' motion for summary judgment on January 27, 2007.

29. The Defendant also testified that his sole checking account was under the name of The Settembre Group, and that he used this account for both business and personal expenses. Other than the limited bank statements, the Defendant produced no business records for The Settembre Group.

30. The Defendant testified that he deposited a portion of the funds borrowed from the Plaintiffs into this business/personal checking account, but contended that these funds constituted only of salary. The banking records could not corroborate this statement. Indeed, the banking records indicate several deposits made into this account, but do not indicate the source of deposits.

31. Additionally, the banking records contain some copies of cancelled checks, but the Defendant failed to indicate on the checks whether they were written for business or personal expenses. Along this same line, the records reveal several large checks made out to the Defendant personally, but there is no notation how the Defendant spent the money. The records also revealed several wire transfers from The Settembre Group account, but no indication where the funds went.

32. The Defendant testified that he used a business checking account as his personal checking account due to a prior bankruptcy filing in 1994.

33. The Defendant possessed a Raymond James brokerage account. While the Defendant testified as to the nature of this account, he could produce no financial records with regard

      to this account.

34.    Defendant also testified that the reason he previously gave for failing to turn over records as ordered was that he had lost them.

### III.   LEGAL DISCUSSION

Generally speaking, discharges in bankruptcy are favored. *Marquis v. Marquis (In re Marquis)*, 203 B.R. 844, 847 (Bankr. D. Me. 1997). Consequently, any party seeking to revoke a debtor's discharge bears the burden of proof to demonstrate, by a preponderance of the evidence, that the debtor has violated one of the subsections of § 727. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991); Fed. R. Bankr. P. 4005.

Section 727(a)(3) provides for a denial of discharge when a debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). This section "requires the debtor to provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP 1999) (*quoting In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Il. 1992)). In order to succeed on a § 727(a)(3) action, a plaintiff need not prove fraudulent intent on the part of the debtor. The law simply provides that the debtor, as a condition precedent to discharge, produce adequate financial records or sufficiently justify the failure to preserve the records. *In re Gentile*, 123 F. Supp. 723, 726 (W.D. Ky. 1954). The burden on the debtor is greater when the debtor is a sophisticated person. A "sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and

detailed the debtor's financial records should be." *McCord v. Sethi (In re Sethi)*, 250 B.R. 831, 839 (Bankr. E.D. NY 2000).

"The party seeking denial of a discharge has the burden of proving the inadequacy of the debtor's records." *Wazeter v. Michigan Nat'l Bank (In re Wazeter)*, 209 B.R. 222, 227 (W.D.Mich.1997) (citations omitted); *Barclays/Am. Business Credit Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995). However, "[o]nce a debtor's records are determined to be inadequate, the burden is on the debtor to establish any justification therefor." *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr. N.D. Ohio 1990).

The Defendant has thrice admitted to being a sophisticated person – twice in his answers and again at trial. The Defendant earned a college degree and worked in the highly regulated insurance business for over 30 years. During the majority of his career, he served in a managerial capacity. The Defendant exhibited a thorough understanding of the intricacies involved in the marketing and selling of insurance products. In the years immediately preceding the filing of this bankruptcy case, he and the entities he owned/ controlled borrowed millions of dollars from the Plaintiffs and other entities. The Defendant did not operate a simple "Mom and Pop" operation. Rather, he ran an insurance agency replete with all the accompanying complexities and regulations. Clearly, the Defendant qualifies as a sophisticated person. As such, he was required to maintain a higher level of record keeping, yet he barely maintained any records, much less records that would enable a creditor to determine his financial condition.

The Defendant could not produce tax records for the year 2000 and could not provide signed copies of his tax records for the years 2001 through 2004. While the Defendant belatedly produced some bank records, the bank records do not allow the Plaintiffs to trace the source of the

Defendant's deposits or to what use the Defendant spent his funds. The funds may have been salary from InsBanc, salary from Lafayette, salary from The Settembre Group, or salary from one of the other entities the Defendant worked for during this period of time. From the meager records provided, there is simply no way of accurately ascertaining the Defendant's financial activities.

The Defendant failed to produce check registers or copies of all cancelled checks. Without copies of checks, the Plaintiffs cannot trace these funds to see if the Defendant used the funds for business or personal reasons. To complicate matters further, the Defendant chose to intermingle his personal and business checking accounts. When a debtor chooses to use a single checking account for business and personal accounts, a higher level of record keeping should be undertaken to distinguish which checks were written for personal uses and which checks were written for business expenses. *In re Buzzelli*, 246 B.R. 75, 102-104 (W.D. Pa. 2000) (holding that bank records and tax returns insufficient where debtor commingled medical practice income and expenses with personal transactions in a single bank account). Here, the Defendant used his account in the name of The Settembre Group as his personal and business checking account, making it impossible to determine the nature of the transactions.

As stated above, there are also numerous checks written to the Defendant, or wire transfers to the Defendant for cash. Indeed, the Defendant admitted that in one year alone he wrote checks totaling $24,000 for cash. The Defendant implied that this amount is *de minimis* for a person in the Defendant's financial situation, but the Court does not agree with that implication. While there is no *per se* rule against cash withdrawals, the number and amount of cash withdrawals are sufficiently high to warrant some accountability. The Defendant produced no records whatsoever detailing the disposition of these cash withdrawals.

To avoid a denial of discharge under § 727(a)(3), a debtor's records may be neither (a)

11

"chaotic or incomplete," (b) in such a condition that a creditor is "required to speculate as to the financial history or condition of the debtor," nor (c) in such a condition that a "creditor [is compelled] to organize and reconstruct the debtor's business affairs." *Buzzelli* at 96; *citing Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir.1992), *In re Juzwiak*, 89 F.3d 424, 428 (7th Cir.1996), and *In re Cox*, 904 F.2d 1399, 1401 (9th Cir.1990). Here, the Defendant provided incomplete records and anyone seeking an examination of the Defendant's finances would be forced to speculate as to the source of the Defendant's deposits and the ultimate disposition of a large portion of the money. Finally, "[t]he test [with respect to the adequacy of the debtor's recorded information] is not whether the debtor [, from an examination of his records,] could determine what was happening in his business (a subjective standard), but [rather] whether a third-party such as a trustee or creditor could determine from the records what was happening in the debtor's business (an objective standard)." *In re Ogden*, 1999 WL 282732, at *13 (10th Cir. BAP 1999). In this case, a third-party could not ascertain how the Defendant obtained his money, or for what purpose, business or personal, the Defendant spent a large portion of his funds. Moreover, while the Defendant offered a smattering of unsubstantiated testimony as to the nature of the transactions, withdrawals and deposits, his testimony lacked credibility. Indeed, the Defendant demonstrated a rather cavalier attitude that permeated his entire testimony, epitomized by his numerous "Whatever you say" responses to questions posed by Plaintiffs' counsel. Regardless, the Defendant's flippant testimony cannot substitute for financial records. *In re Sethi*, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000).

The Court provided the Defendant with ample time to locate and produce the requested financial records, and the Defendant failed to produce the records. Thus, the question turns to whether the Defendant has a sufficient justification for not maintaining his financial records. In his objection to the Plaintiffs' motion for summary judgment and again at trial, the Defendant contended

12

that he lost the financial documents during a move. As the Court found in its order granting summary judgment, this excuse is patently insufficient. *In re Buzzelli*, 246 B.R. 75, 102-104 (Bankr. W.D. Pa. 2000), *accord In re Sethi*, 250 B.R. at 840 (noting that debtor failed to show records "were destroyed or lost due to some event beyond his control, such as fire or theft"). Ultimately, the Defendant bears the responsibility to insure the preservation of financial documents during a move. As the Defendant failed to meet his responsibility, his discharge must be denied.

In the Amended Complaint, the Plaintiffs also alleged the Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(D). 11 U.S.C. § 727(a)(4)(D) states:

> (a) The court shall grant the debtor a discharge, unless-
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

The party objecting to discharge under 11 U.S.C. § 727(a)(4)(D) has the burden of proving that: 1) the debtor withheld documents relating to the debtor's property or financial affairs; 2) in connection with a case; 3) from an officer of the estate entitled to possession; 4) and such withholding was knowingly and fraudulently. *Olson v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006).

Based upon the evidence presented, the Plaintiffs did not meet their burden of proof with respect to this count of their complaint. While the Plaintiffs proved that the Defendant lackadaisically responded to the production orders and that he failed to keep or preserve financial records, the Plaintiffs presented no evidence that the Defendant knowingly and fraudulently withheld documents. Indeed, it appears the Defendant inexcusably lost the records, rather than withheld

them. As stated above, it is beyond cavil that the Defendant failed to keep sufficient records. The Court is not convinced, however, that the Defendant knowingly or fraudulently withheld documents. *Dzikowski v. Chauncey (In re Chauncey),* 308 B.R. 97, 104 (Bankr. S.D. Fla. 2004), *aff'd*, 2005 WL 2456223 (S.D. Fla. 2005), *af'd in part, rev'd in part*, 454 F.3d 1292 (11th Cir. 2006) (the court denied the § 727(a)(4)(D) objection to the debtor's discharge where the debtor lost books and records).

This takes the Court to the last count of the Plaintiffs Amended Complaint, that the Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(6)(A) for his refusal to obey a lawful court order. The Plaintiffs contend the Defendant refused to comply with the order entered May 17, 2006, and the amended order entered June 16, 2006, requiring the production of documents. Section 727(a)(6)(A) provides that a court shall grant the debtor a discharge unless the debtor has refused, in the case "to obey any lawful order of the court, other than an order to respond to a material question or to testify." Many courts have used the same test for civil contempt to determine if a debtor has refused to obey an order for § 727(a)(6)(A) purposes. *In re Meyers*, 293 B.R. 417, 419 (Bankr. N.D. Ohio 2002) (a debtor will be found to have "refused" to obey a court order under § 727(a)(6)(A) when the debtor's inaction would give rise to a charge of civil contempt); *Hazlett v. Gorshe (In re Gorshe)*, 269 B.R. 744, 747 (Bankr. S.D. Ohio 2001) (refusal to obey the order must be akin to civil contempt); *United States v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D. Mo. 1988) (an objection to discharge for refusal to obey a lawful order of court is, in substance, a contempt proceeding). To prevail in a civil contempt proceeding, three elements must be established: "(1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." *In re Magack*, 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) *citing Glover*

*v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).

In this case, there is no real dispute that the Plaintiffs met their burden of proof with respect to these three elements. The Defendant knew of the May 17, 2006 and the June 16, 2006 orders, he failed to comply by producing all the documents, and the production orders were specific and definite. At trial, the Defendant offered no real defense to any of these elements.

The Court's analysis of this count cannot stop with a finding that the Plaintiffs satisfied the elements set forth above. Impossibility or an inability to comply with a judicial order is a valid defense to a charge of civil contempt. *United States v. Bryan*, 339 U.S. 323, 330-334, 70 S.Ct. 724, 730-732, 94 L.Ed. 884 (1950) ("Ordinarily, one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply."). Such a defense requires that the person charged with contempt to have exercised due diligence and, through no fault of their own, is still unable to comply with the order. Here, the Defendant swore that he did not produce the documents because he lost them in a move. As stated above, the Court does not doubt the veracity of the Defendant's claims that he lost the records. While inexcusably lost records do not provide a defense to the § 727(a)(3) count, lost records do offer the Defendant a defense on the § 727(a)(6)(A) count. Because the Defendant did not possess all of his financial records, this constitutes an inability to comply with the court orders, and a defense to the § 727(a)(6)(A) count.

In conclusion, the Court finds that the Defendant is a highly sophisticated person, involved in complex financial relationships with the Plaintiffs and other creditors, however, his financial records did not comport with these relationships, and the Defendant's meager proof offered nothing that justified this failure. Consequently, the Defendant's bankruptcy discharge must be denied pursuant to 11 U.S.C. § 727(a)(3). Because the Defendant lost the financial records, he did not knowingly or fraudulently withhold records from an officer of the estate and could not comply with

the Court's orders of production. Thus, the Defendant's discharge may not be denied pursuant to 11 U.S.C. §§ 727(a)(4)(D) or (a)(6)(A). The Court shall enter an Order this same date in accordance with the holding of this Memorandum.

David T. Stosberg
United States Bankruptcy Judge

Dated: February 1, 2010

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| FIORAVANTE SETTEMBRE ) | CASE NO. 05-61271 |
| ) | CHAPTER 7 |
| Debtor. ) | |
| _____ ) | |
| FIDELITY & GUARANTY LIFE INSURANCE ) | |
| COMPANY and LIFE EVENT ADVANTAGE ) | |
| DIVISION OF LIFE INSURANCE COMPANY ) | |
| OF THE SOUTHWEST and NATIONAL LIFE ) | |
| INSURANCE COMPANY ) | |
| Plaintiffs. ) | |
| vs. ) | A.P. No. 06-3133 |
| FIORAVANTE SETTEMBRE ) | |
| Defendant. ) | |
| _____ ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Judgment is rendered in favor of the Plaintiffs and against the Defendant and that the Defendant be, and hereby is, denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

David T. Stosberg
United States Bankruptcy Judge

Dated: February 1, 2010